## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| PENNSYLVANIA TURNPIKE COMMISSION, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. _____ |
| v. : | |
| : | |
| 1101 NORTHERN BLVD, LLC, : | |
| : | |
| Defendant. : | |

_____

## COMPLAINT

Plaintiff, the Pennsylvania Turnpike Commission (the "Commission" or "Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against 1101 Northern Blvd, LLC ("Defendant"), and avers in support thereof as follows.

## SUMMARY OF THE ACTION

1.      Defendant is, or was, engaged in development of a property that is slated to include a Sheetz gasoline station and convenience store in South Abington Township, Pennsylvania. Defendant trespassed and continues to trespass on the Commission's property, located immediately beneath the Pennsylvania Turnpike Northeastern Extension, Interstate 476 ("I-476"), Clarks Summit Bridge (the "Property") by having constructed in connection with its development a stormwater outfall pipe on the Commission's Property without the Commission's permission.

2.     This stormwater outfall pipe has and continues to discharge stormwater onto the Property in the direction of pillars supporting the Clarks Summit Bridge.

3.     Defendant never sought the Commission's permission to construct its stormwater outfall pipe on the Commission's Property. Defendant has committed negligence, nuisance, and trespass by constructing its stormwater infrastructure on the Commission's Property without the Commission's permission.

4.     Further, in violation of the Pennsylvania Clean Streams Law ("PA CSL"), Defendant failed to satisfy conditions of its National Pollutant Discharge Elimination System ("NPDES") permit which required Defendant to obtain permission for construction of the stormwater infrastructure and to account for and mitigate the impacts of any off-site discharges from that infrastructure.

5.     The Commission demands the immediate removal of the stormwater outfall pipe, repair and restoration of the Property, payment of damages in excess of $75,000, and attorneys' fees.

## JURISDICTION AND VENUE

6.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the Commission is a citizen of Pennsylvania for jurisdictional purposes, the Defendant is a citizen of New Jersey and Wyoming, and the amount in controversy exceeds $75,000.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the Property is located in this judicial district and a substantial part of the acts and omissions giving rise to this claim occurred in this judicial district.

## PARTIES

8.      Plaintiff, the Pennsylvania Turnpike Commission, is an instrumentality of the Commonwealth of Pennsylvania that operates the Pennsylvania Turnpike System ("Turnpike") and whose mailing address is P.O. Box 67676, Harrisburg, Pennsylvania 17106-7676.

9.      The Commission owns the land on which the Clarks Summit Bridge is located, the Property in fee, which Property is situated in South Abington Township, Lackawanna County. The Commission is authorized and empowered by Section 3 of the Act of July 18, 2007, P.L. 169, No. 44, as amended, to acquire by purchase or condemnation any lands, rights, easements, franchises and other property deemed necessary or convenient for the construction or efficient operation of the Turnpike.

10.      Defendant, 1101 Northern Blvd, LLC, is a Wyoming limited liability company with its principal place of business at 3 Becker Farm Road, Suite 404, Roseland, New Jersey 07068.

11.      Defendant is, or was, engaged in the development of a new Sheetz gasoline station and convenience store located at 1101 Northern Boulevard, South

Abington Township, Pennsylvania 18411 (the "Sheetz Development"). The Sheetz Development is adjacent to the Property.

## FACTUAL BACKGROUND

### The Commission Property

12.     The Commission is the owner in fee of the Property, which is part of the limited access right-of-way for the Pennsylvania Turnpike Northeastern Extension (I-476) and is located under and adjacent to the Clarks Summit Bridge.

13.     The Clarks Summit Bridge was completed in 1957. It stands more than one hundred fifty feet above the land below, including the Property and the Sheetz Development. It spans more than sixteen hundred feet and carries four lanes of interstate traffic.

14.     The Property beneath the bridge includes limited vegetation, bridge support pillars, and open land leading to Fall Creek.

15.     The Property is used for the purpose of protecting the Clarks Summit Bridge right-of-way and its support pillars and for ensuring the structural integrity of the Clarks Summit Bridge.

### The Sheetz Development

16.     In or about 2019, Defendant and its member Mr. Ankim Shah and his affiliated companies, Falcon Companies and Falcon Partners LLC, set out to develop the Sheetz Development, dubbed "The Shoppes at South Abington" and to include

a new Sheetz gasoline station and convenience store at the property located at 1101 Northern Boulevard, Clarks Summit, Pennsylvania 18411.

17.    The Sheetz Development property is immediately adjacent to the Commission's Property and adjacent to and beneath the Clarks Summit Bridge.

18.    On or about January 13, 2020, Defendant applied to the Lackawanna County Conservation District ("LCCD") for coverage under the Pennsylvania Department of Environmental Protection ("PADEP") general (PAG-02) National Pollutant Discharge Elimination System ("NPDES") permit to allow for stormwater discharges associated with Defendant's Sheetz Development. A copy of the permit application and the resulting NPDES permit is attached to the Complaint as Exhibit "A."

19.    Section D, item 5 of the application provides that if an applicant proposes any off-site discharges to areas other than surface water, the applicant "must have appropriate easement that provides the legal authority for this off-site discharge" and requires the applicant "to provide a demonstration in both the [erosion and sediment control plan ("E&S plan")] and [post-construction stormwater management plan ("PCSM plan")] that the discharge will not cause erosion, damage, or nuisance to off-site properties."

20.    Defendant checked the "Yes" box in the application, indicating that the Sheetz Development proposed an off-site discharge, and therefore must comply with the conditions of Section D, item 5, quoted in the previous paragraph.

21.    Defendant neither requested nor obtained an easement from the Commission that would allow for the construction of a stormwater outfall on the Commission's Property.

22.    Without the consent of or permission of the Commission, Defendant nevertheless constructed a stormwater outfall and new stormwater conveyance channel (hereafter the "stormwater infrastructure") on the Commission's Property that is discharging stormwater onto and across the Commission's Property, toward Fall Creek, located on the Commission's Property.

23.    Defendant constructed the stormwater infrastructure without obtaining an easement on the Property for the placement of the stormwater infrastructure or for the resulting stormwater discharge therefrom.

24.    Defendant's E&S plan and PCSM plan failed to provide a demonstration that the discharge would not cause erosion, damage, or nuisance to the Commission's Property.

25.    On March 27, 2020, the LCCD under the authority of the federal Clean Water Act, 33 U.S.C. §§ 1251-1387, and the PA CSL, 35 P.S. §§ 691.1-691.1001, approved Defendant's request for coverage and issued Defendant a PAG-02 NPDES

6

General Permit for Discharges of Stormwater Associated with Construction Activities, identified as Permit No. PAC 35 0074, (hereinafter the "NPDES Permit").

26.    Defendant submitted an application for renewal of the NPDES Permit in late 2024, and a renewed NPDES Permit was issued on December 11, 2024. A copy of the renewed NPDES Permit is attached to the Complaint as Exhibit "B."

27.    Defendant's NPDES Permit and its renewal incorporated the application, the E&S plan, and the PCSM plan.

28.    Part B.III.F. of Defendant's NPDES Permit specifies that "approval of coverage under [the NPDES Permit] does not authorize any injury to persons or property or invasion of other private rights…"

29.    Part C.XII.E. of Defendant's NPDES Permit also requires Defendant to "ensure that [erosion and sediment control best management practices ("E&S BMPs")] and [post-construction stormwater management stormwater control measures ("PCSM SCMs")] are installed and maintained for all off-site discharges to areas other than surface waters, as applicable, including but not limited to swales, ditches, and the ground surface."

30.    Pursuant to the plans submitted along with the NPDES Permit application, Defendant constructed new stormwater infrastructure designed to convey the stormwater from the Sheetz Development to the nearby Fall Creek.

31.    Without the Commission's permission or an appropriate easement allowing for such construction, Defendant constructed the new stormwater outfall on the Commission's Property beneath the Clarks Summit Bridge.

32.    Upon information and belief, Defendant has failed to ensure that E&S BMPs and PCSM SCMs were installed and maintained for the stormwater discharges to the Commission's Property.

33.    Photographs of the newly constructed stormwater infrastructure are included below.



*Photo 1: Stormwater channel dug on Commission Property without Permission*



*Photo 2:  Reverse view of the new stormwater channel (at left), dug out on Commission Property without permission from the Commission*

**Commission's Response to Defendant's Construction**

34.    Defendant's stormwater infrastructure associated with the Sheetz Development and the continuous discharge of stormwater therefrom has caused, and is continuing to cause, significant damage to the Commission's Property, including but not limited to: significant erosion of the land surface; the creation of gullies and channels through the vegetated area on the Property that never before existed; potential for substantial and continual flooding of the Property; the creation of ponded water in areas that never before existed on the Property; the expansion of ponded water on the Property; and carrying of trash, debris, sediment, and other pollution onto the Property.

35.    The stormwater infrastructure and continuous discharge of stormwater therefrom is occurring in the absence of demonstrations to determine whether discharges to the Property will cause erosion, damage, or a nuisance to the Property, including to the Clarks Summit Bridge's structural pillars, as required under Defendant's NPDES Permit, Section D, Item 5.

36.    Each day that the stormwater infrastructure, and the resulting stormwater discharge, remains on the Property, the Property is significantly and substantially damaged. Such damage will continue unless and until the Defendant removes the stormwater infrastructure from the Property and fully restores the Property to the condition it was in prior to the Defendant's illegal and unauthorized

construction of the stormwater infrastructure on the Property and allowing the discharge of stormwater to continue to occur.

37.    On September 27, 2024, the Commission notified Defendant of damage to the Commission's Property caused by Defendant's construction, including notifying Defendant that "[a] stormwater inlet, outlet pipe and new drainage ditch has been constructed on Commission property – *without permission or notice to the Commission*." The Commission directed Defendant to immediately cease and desist from the trespass on Commission's Property.

38.    On February 7, 2025, the Commission, through counsel, again notified Defendant of the unauthorized construction and trespass. The Commission requested additional documents and information related to the Sheetz Development and requested a plan for the immediate removal of the stormwater infrastructure from the Commission's Property.

39.    On March 21, 2025, the Commission, through counsel, again contacted Defendant about the unauthorized construction and trespass. The Commission also provided formal notice of the Commission's intent to sue Defendant including for violations of the PA CSL. This notice was provided to both Defendant and the Pennsylvania Department of Environmental Protection, as required by Section 601(e) of the PA CSL, 35 P.S.§ 601(e).

40.    The same day, Defendant confirmed receipt of the Commission's March 21, 2025 letter.

41.    More than a month later and approximately one week before the 60-day notice period provided in the PA CSL was set to run, on May 15, 2025, Defendant responded to the notice letter, denying that Defendant constructed the stormwater infrastructure on the Property without permission and denying that Defendant unlawfully altered or diverted flow of water or stormwater onto the Property.

## COUNT I – NEGLIGENCE

42.    Plaintiff incorporates by reference the averments set forth above as if set forth in full in this Paragraph.

43.    Defendant, including its members, officers, agents, representatives, and employees, owes a duty of care to the Commission to act reasonably in the exercise of Defendant's business and its construction of the Sheetz Development, including construction of the stormwater infrastructure.

44.    Defendant, including its members, officers, agents, representatives, and employees, failed to notify Plaintiff that it was constructing the stormwater infrastructure on the Property, failed to seek the Commission's consent to construct the stormwater infrastructure on the Property, and failed to seek the Commission's consent to allow the resulting stormwater discharge therefrom.

45.    Defendant, including its members, officers, agents, representatives, and employees, was negligent in the installation and construction of the stormwater infrastructure on the Property.

46.    Defendant, including its members, officers, agents, representatives, and employees, knew or in the exercise of reasonable due care should have known that the construction of the stormwater infrastructure on the Property, and the resulting stormwater discharge therefrom, would result in harm and damage to the Property.

47.    Defendant, including its members, officers, agents, representatives, and employees, breached the standard of care, acted unreasonably, and was negligent in constructing the stormwater infrastructure on the Property without the Commission's permission, by not seeking the Commission's consent before doing so, and by illegally trespassing on the Property.

48.    Defendant, including its members, officers, agents, representatives, and employees, breached the standard of care, acted unreasonably, and was negligent by not immediately addressing, responding to, or otherwise taking actions to abate the damage that has been caused, and is continuing to be caused, by the presence and discharges from stormwater infrastructure on the Property.

49.    Defendant's acts or omissions described herein were the direct and proximate cause of the damages and injuries to the Property.

50.     To date, despite being on notice, Defendant has failed to take any actions to protect against such dangerous conditions or to otherwise ameliorate the damage that is continuing to be caused to the Property each day that the condition remains unabated.

51.     Some or all of Defendant's acts or omissions were intentional and grossly, recklessly, and wantonly negligent, or were done with utter disregard for the consequences to Plaintiff and the Property, and therefore entitle Plaintiff to an award of punitive damages.

52.     Plaintiff, the Commission, has not contributed to the damages and injuries that have been caused to the Property.

53.     Defendant is liable for all damages and injuries Plaintiff has suffered due to Defendant's negligence.

54.     Defendant is further liable to remove the stormwater infrastructure from the property and/or abate, repair, or restore the ongoing damages caused by the unauthorized stormwater infrastructure and continuing discharges therefrom.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgement in its favor and against Defendant as follows:

(a)     enter an order declaring that Defendant has acted negligently by constructing the stormwater infrastructure on the Property without the Commission's permission;

13

(b)    enjoin Defendant from continuing to trespass on the Property by allowing the illegal and unpermitted stormwater infrastructure to remain on the Property;

(c)    direct Defendant to immediately remove the stormwater infrastructure from the Property;

(d)    award to Plaintiff compensatory damages in an amount to be determined at trial for the damage that has been caused and will continue to be caused to the Property;

(e)    award to Plaintiff punitive damages, litigation costs, pre-judgment and post-judgment interest, and all such other relief as the Court deems necessary, just, and appropriate.

## COUNT II – PRIVATE NUISANCE

55.    Plaintiff incorporates by reference the averments set forth above as if set forth in full in this Paragraph.

56.    Defendant, by its acts and omissions, or the actions and omissions of its members, officers, agents, representatives, and employees, has unreasonably interfered with the Commission's use and enjoyment of the Property in the form of the illegal placement of stormwater infrastructure on the Property and the resulting discharge of stormwater onto the Property, which has the potential to impact the bridge pillars of the Clarks Summit Bridge located on the Property.

14

57.    Plaintiff has suffered and will continue to suffer significant and continuous damage to the Property as a direct and proximate result of the private nuisance that Defendant created by constructing the unauthorized stormwater infrastructure and the resulting stormwater discharge onto the Property.

58.    To date, despite being on notice, Defendant has failed to take any actions to protect against such dangerous conditions or to otherwise ameliorate the damage that is continuing to be caused to the Property each day that the condition remains unabated.

59.    Each day that the stormwater infrastructure and resulting stormwater discharge remain on the Property continues and exacerbates the nuisance that has caused and will continue to cause significant harm and damage to the Property.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgement in its favor and against Defendant as follows:

(a)    enter an order declaring that Defendant has created at nuisance on the Property by constructing the stormwater infrastructure on the Property without the Commission's permission;

(b)    enjoin Defendant from maintaining the nuisance on the Property by allowing the illegal and unpermitted stormwater infrastructure to remain on the Property;

(c)    direct Defendant to immediately remove the stormwater infrastructure from the Property;

(d)    award to Plaintiff compensatory damages in an amount to be determined at trial for the damage that has been caused and will continue to be caused to the Property;

(e)    award to Plaintiff punitive damages, litigation costs, pre-judgment and post-judgment interest, and all such other relief as the Court deems necessary, just, and appropriate.

## COUNT III – TRESPASS

60.    Plaintiff incorporates by reference the averments set forth above as if set forth in full in this Paragraph.

61.    Defendant, including its members, officers, agents, representatives, and employees, knowingly and willfully placed the stormwater infrastructure on the Property without the Commission's consent or permission, and without obtaining an easement for either the stormwater infrastructure or the resulting stormwater discharge on the Property.

62.    Defendant, its agents, servants, or employees, knowingly and willfully have allowed the stormwater infrastructure to remain on the Property after being notified that Plaintiff did not grant any consent or permission to Defendant for the stormwater infrastructure on the Property.

63.    Each day that the stormwater infrastructure remains on the Property constitutes a trespass under law, which has caused, and will continue to cause significant harm and damage to the Property.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgement in its favor and against Defendant as follows:

(a)    enter an order declaring that Defendant has trespassed on the Commission's Property by constructing the stormwater infrastructure on the Property without the Commission's permission;

(b)    enjoin Defendant from trespassing on the Property by allowing the illegal and unpermitted stormwater infrastructure to remain on the Property;

(c)    direct Defendant to immediately remove the stormwater infrastructure from the Property;

(d)    award to Plaintiff compensatory damages in an amount to be determined at trial for the damage that has been caused and will continue to be caused to the Property;

(e)    award to Plaintiff punitive damages, litigation costs, pre-judgment and post-judgment interest, and all such other relief as the Court deems necessary, just, and appropriate.

## COUNT IV – PENNSYLVANIA'S CLEAN STREAMS LAW

64.    Plaintiff incorporates by reference the averments set forth above as if set forth in full in this Paragraph.

65.    Section 601(c) of the PA CSL, 35 P.S. § 691.601(c), provides that "any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this act or any rule, regulation, order or permit issued pursuant to this act … against any other person alleged to be in violation of any provision of this act or any rule, regulation, order or permit issued pursuant to this act."

66.    Section 601(e) of the PA CSL, 35 P.S. § 691.601(e), provides that "[n]o action pursuant to this section may be commenced prior to sixty days after the plaintiff has given notice in writing of the violation to the department and to any alleged violator…"

67.    Defendant's NPDES Permit was issued by the LCCD under the authority of the federal Clean Water Act, 33 U.S.C. §§ 1251-1387, and the PA CSL, 35 P.S. §§ 691.1-691.1001, and remains effective in its renewed form until December 7, 2029.

68.    Defendant's permit application, E&S plan, and PCSM plan are incorporated into Defendant's NPDES Permit.

69.     Section D, Item 5 of the application provided that if an applicant proposes any off-site discharges to areas other than surface water, the applicant "must have appropriate easement that provides the legal authority for this off-site discharge" and requires the applicant "to provide a demonstration in both the E&S plan and PCSM plan that the discharge will not cause erosion, damage, or nuisance to off-site properties."

70.     Defendant confirmed in its application that the Sheetz Development proposed such an off-site discharge.

71.     Part C.XII.E. of Defendant's NPDES Permit also requires Defendant to "ensure that E&S BMPs and PCSM SCMs are installed and maintained for all off-site discharges to areas other than surface waters, as applicable, including but not limited to swales, ditches, and the ground surface."

72.     Defendant, including its members, officers, agents, representatives, and employees, knowingly and willfully placed the stormwater infrastructure on the Property without obtaining an easement for the presence of the stormwater infrastructure or for the resulting stormwater discharge on the Property.

73.     Defendant's E&S plan and PCSM plan failed to demonstrate that Defendants' stormwater discharge would not cause erosion, damage, or nuisance to the Property.

74.    Upon information and belief, Defendant has also failed to ensure that E&S BMPs and PCSM SCMs were installed and maintained for the stormwater discharges to the Commission's Property.

75.    Defendant, by its acts and omissions, or the actions and omissions of its members, officers, agents, representatives, or employees, violated the NPDES Permit and therefore violated the federal Clean Water Act and the PA CSL authorizing the NPDES Permit.

76.    Plaintiff provided notice to Defendant and the Pennsylvania Department of Environmental Protection on March 21, 2025 of Defendant's violations of the PA CSL more than sixty (60) days prior to the commencement of this action, as required by Section 601(e), 35 P.S. § 691.601(e).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgement in its favor and against Defendant as follows:

(a)    enter an order declaring that Defendant has and continues to be in violation of the PA CSL through violating the NPDES Permit by constructing the stormwater infrastructure on the Property without the Commission's permission or an appropriate easement;

(b)    enjoin Defendant from continuing to maintain the stormwater infrastructure and its associated discharges on the Property despite violating the NPDES Permit and the PA CSL;

20

(c)    direct Defendant to immediately remove the stormwater infrastructure and continuing discharge of stormwater from the Property;

(d)    award to Plaintiff costs and attorneys' fees pursuant to 35 P.S. § 691.601, punitive damages, litigation costs, pre-judgment and post-judgment interest, and all such other relief as the Court deems necessary, just, and appropriate.

Date: May 22, 2025

/s/ Garrett D. Trego
MANKO, GOLD, KATCHER & FOX, LLP
Garrett Trego, Esq. (PA I.D. No. 314496)
Sean Fahy, Esq. (PA I.D. No. 330692)
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA  19004
Tel: (484)-430-5700; Fax: (484)-430-5711
gtrego@mankogold.com
sfahy@mankogold.com

*Attorneys for Plaintiff,*
*the Pennsylvania Turnpike Commission*

21